# EXHIBIT 1

## First Amended Complaint

# EXHIBIT 1

Electronically Filed
6/22/2020 1:14 PM
Steven D. Grierson
CLERK OF THE COURT

**ACOM**
KEVIN R. STOLWORTHY, ESQ.
Nevada Bar No. 2798
BRANDON P. JOHANSSON, ESQ.
Nevada Bar No. 12003
ARMSTRONG TEASDALE LLP
3770 Howard Hughes Parkway, Suite 200
Las Vegas, Nevada 89169
Telephone:  702.678.5070
Facsimile:  702.878.9995
kstolworthy@atllp.com
bjohansson@atllp.com

JAMES L. SANDERS, ESQ.
California Bar No. 126291 (*Admitted Pro Hac Vice*)
KASEY J. CURTIS, ESQ.
California Bar No. 268173 (*Admitted Pro Hac Vice*)
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, California 90071
Telephone:  213.457.8000
Facsimile:  213.457.8080
jsanders@reedsmith.com
kcurtis@reedsmith.com

*Attorneys for Plaintiffs*

## DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| JC HOSPITALITY, LLC, a Delaware limited liability company, HRHH PROPCO, LLC, a Delaware limited liability company; HRHH CAFÉ PROPCO, LLC, a Delaware limited liability company; MARTIN-HARRIS CONSTRUCTION, LLC, a Nevada limited liability company by and through is assignee JC HOSPITALITY, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> BZ CLARITY HOLDINGS, LLC d/b/a BASE ENTERTAINMENT, a Delaware limited liability company; SLATE THE VOICE LIMITED PARTNERSHIP, a Delaware limited partnership; BASE THE VOICE, LLC, a Delaware limited liability company; ROE COMPANIES, 1-10; DOE INDIVIDUALS, 3-10; MOE LIMITED LIABILITY COMPANIES, 2-10; and NOE PARTNERSHIPS, 1-10, <br><br> Defendants. | Case No.: A-19-803234-B <br><br> Dept. No.: 27 <br><br> **FIRST AMENDED COMPLAINT** |

Plaintiffs JC Hospitality, LLC, HRHH PropCo, LLC, HRHH Café PropCo, LLC, and Martin-

Harris Construction, LLC by and through its assignee JC Hospitality, LLC (collectively, "Plaintiffs")

1

by and through their counsel, Armstrong Teasdale LLP and Reed Smith LLP, hereby state and allege as follows:

## I.   INTRODUCTION

1.      Plaintiffs, the current owners of the Hard Rock Hotel & Casino – Las Vegas (the "Hard Rock"), have brought this action to seek redress for the millions of dollars in harm they have suffered as a result of Defendants' ████████████████████████████████████████ ████████████████████████████████████████████████████████. Defendants' misconduct relates to a live show Defendant SLATE The Voice Limited Partnership ("SLATE") contracted to develop and produce based upon "The Voice" television show (the "Voice Show").  In late 2017, SLATE entered into a commercial lease for certain space at the Hard Rock on which it promised to construct a new 750-seat venue (the "Venue") it would use for the Voice Show. Although the Hard Rock gave SLATE a total of $2.75 million in tenant improvement dollars to pay for construction of the Venue, ██████████████████████████████████ ██████████████████████████████████████████████. Defendants then concealed ████████████████ to induce the Hard Rock to continue making further disbursements and, when the project fell apart because Defendants could not pay their general contractor, abandoned construction, leaving millions of dollars in unpaid bills and mechanic's liens.  Plaintiffs have since had to pay Defendants' general contractor $1.55 million to secure release of those mechanic's liens and taken an assignment of the general contractor's claims.  By this lawsuit, Plaintiffs seek to hold Defendants responsible for their fraudulent conversion of the tenant improvement dollars, clear breaches of the lease, and failure to pay their general contractor amounts that Defendants admit they owe.

## II.   PARTIES

2.      JC Hospitality, LLC ("JC Hospitality") is a limited liability company organized under the laws of the State of Delaware.  JC Hospitality is registered with the Nevada Secretary of State as a foreign corporation and is authorized to conduct business in Clark County, Nevada.  JC Hospitality is the current owner of the Hard Rock.  JC Hospitality owns the real property on which the Hard Rock is located through two subsidiaries:   HRHH PropCo ("HRHH PropCo") and HRHH Café

PropCo, LLC ("HRHH Café").

3.    HRHH Café is a limited liability company organized under the laws of the State of Delaware.  HRHH Café is registered with the Nevada Secretary of State as a foreign corporation and is authorized to conduct business in Clark County, Nevada.  HRHH Café PropCo, LLC is the current owner of certain real property designated APN 162-22-201-004.

4.    HRHH PropCo is a limited liability company organized under the laws of the State of Delaware.  HRHH PropCo is registered with the Nevada Secretary of State as a foreign corporation and is authorized to conduct business in Clark County, Nevada.  HRHH PropCo is the current owner of certain real property designated APN 162-21-615-003.

5.    Martin-Harris Construction, LLC ("Martin-Harris") is a limited liability company organized under the laws of the State of Nevada.  Martin-Harris is a general contractor in the business of providing general contracting services for projects in the Las Vegas area.  Martin-Harris is the general contractor Defendants retained to construct the Venue.  Martin-Harris is a party to this case in name only.  It has assigned the claims asserted in this lawsuit to JC Hospitality, who is prosecuting said claims in Martin-Harris's name.

6.    Plaintiffs are informed and believe, and therefore allege, that BZ Clarity Holdings, LLC d/b/a "BASE Entertainment" ("BASE Entertainment") is a limited liability company organized under the laws of the State of Delaware.  BASE Entertainment is registered with the Nevada Secretary of State as a foreign corporation and is authorized to conduct business in Clark County, Nevada.  BASE Entertainment holds itself out to be a live entertainment company that develops and produces live entertainment.  In reality, BASE Entertainment's live entertainment offerings are developed and produced by shell companies that BASE Entertainment forms in an attempt to shield itself from liability for its failed projects—like the one that is the subject this lawsuit.  BASE Entertainment dominates, controls, and manages of the affairs of these shell companies.  BASE Entertainment is being added to this lawsuit in place of MOE Limited Liability Company 1.

7.    Plaintiffs are informed and believe, and therefore allege, that SLATE The Voice Limited Partnership ("SLATE") is a limited partnership formed under the laws of the state of Delaware and authorized to conduct business in Clark County, Nevada.  SLATE is the shell formed

3

by BASE Entertainment to develop and produce the Voice Show.  SLATE is an affiliate of BASE Entertainment.

8.      Plaintiffs are informed and believe, and therefore allege, that BASE The Voice, LLC ("BASE") is a limited liability company organized under the laws of the State of Delaware.  BASE is the general partner of SLATE and, as such, is jointly and severally liable for all obligations of SLATE.

9.      At all relevant times, SLATE and BASE were the alter-egos of BASE Entertainment, and there exists, and at all relevant times has existed, a unity of interest and ownership between SLATE, BASE, and BASE Entertainment such that any separateness between them has ceased to exist in that BASE Entertainment completely controlled, dominated, managed and operated SLATE and BASE for its own ends.  Specifically, at all relevant times, and as alleged more fully below, BASE Entertainment: (1) dominated and controlled the business affairs of SLATE and BASE; (2) commingled funds and assets of SLATE and BASE with its own assets and diverted their funds and assets for its own use; (3) disregarded legal and corporate formalities between and among the corporate entities; (4) inadequately capitalized SLATE and BASE; (5) used the same offices and/or business locations for all corporate entities; (6) employed the same employees, agents and representatives for all corporate entities; (7) used the assets of SLATE and BASE to pay its own expenses and liabilities; and (8) used the corporate entities to promote fraud.

10.      At all relevant times, as alleged more fully below, each Defendant acted as an agent, servant, employee, co-conspirator, alter-ego and/or joint venture of the other Defendants, and in conducting the acts alleged herein acted within the source and scope of such agency, employment, alter-ego and/or in furtherance of the joint venture.  Each of the Defendants' acts alleged herein was done with the permission and consent of each of the other Defendants.

11.      The true names and capacities, whether individual, corporate, or otherwise of Defendants ROE Companies 1-10 are presently unknown to Plaintiffs who therefore sue said defendants by such fictitious names.  Plaintiffs are informed and believe, and therefore allege, that each of the defendants designated herein as ROE Companies 1-10 is legally responsible for the events referred to in this Complaint, which will be amended to include them when their true names

1    and capacities are known.

2        12.    The true names and capacities of Defendants DOE Individuals 3-10 are presently

3    unknown to Plaintiffs who therefore sue said defendants by such fictitious names.  Plaintiffs are

4    informed and believe, and therefore allege, that each of the defendants designated herein as DOE

5    Individuals 1-10 is legally responsible for the events referred to in this Complaint, which will be

6    amended to include them when their true names and capacities are known.

7        13.    The true names and capacities of Defendants MOE Limited Liability Companies 2-10

8    are presently unknown to Plaintiffs who therefore sue said defendants by such fictitious names.

9    Plaintiffs are informed and believe, and therefore allege, that each of the defendants designated

10   herein as MOE Limited Liability Companies 1-10 is legally responsible for the events referred to in

11   this Complaint, which will be amended to include them when their true names and capacities are

12   known.

13       14.    The true names and capacities of Defendants NOE Partnerships 1-10 are presently

14   unknown to Plaintiffs who therefore sue said defendants by such fictitious names.  Plaintiffs are

15   informed and believe, and therefore allege, that each of the defendants designated herein as NOE

16   Partnerships 1-10 is legally responsible for the events referred to in this Complaint, which will be

17   amended to include them when their true names and capacities are known.

18                              **III. JURISDICTION AND VENUE**

19       15.    This Court has jurisdiction over this action pursuant to the Nevada Constitution,

20   Article 6, § 6 and because the acts and omissions complained herein involve a contract entered into

21   between entities authorized to do business in Clark County, Nevada.  Further, the amount in

22   controversy exceeds $15,000.

23       16.    Venue is proper in this Court pursuant to NRS 13.010(1)(c) and (2)(b) and NRS

24   Chapter 40.

25                              **IV. GENERAL ALLEGATIONS**

26   **A.    The Hard Rock**

27       17.    The Hard Rock is a hotel and casino located on 16.7 acres of land adjacent to "The

28   Strip" in Las Vegas, Nevada.  Built in 1995, the Hard Rock has 1,500 guest rooms, a 30,000-square-

                                            5

foot casino, a nightclub, six restaurants, three cocktail lounges, five main pools, several retail stores, and a music venue.

18.   At all relevant times prior to March 30, 2018, the Hard Rock was owned by Brookfield Asset Management—through various indirect holding entities.  Those holding entities include:  HRHH Hotel/Casino, LLC, LVHR Casino, LLC, HRHH IP, LLC, HRHH Café, LLC, and HRHH Gaming Senior Mezz, LLC (collectively, "Brookfield").

19.   On March 30, 2018, the first portion of Brookfield's sale of the Hard Rock to JC Hospitality closed.  In connection with that closing, JC Hospitality acquired HRHH Café and HRHH PropCo (who, in turn, owned the real property at the Hard Rock that is the subject of this dispute), the subject tenant lease, and all of Brookfield's pre-closing rights and claims against SLATE.

**B.    The Lease With Tenant**

20.   On October 10, 2017, SLATE and one of the Brookfield entities, HRHH Hotel/Casino, LLC ("Original Landlord"), entered into a Lease (the "Lease") for certain premises spanning APNs 162-22-201-004 and 162-21-615-003 located at the Hard Rock (the "Premises") on which SLATE was to construct a 750-seat venue ("Venue") that SLATE would use to put on a live show based on the "The Voice" television show on NBC (the "Voice Show").

21.   With respect to the construction of the Venue, the Lease required SLATE to:

a.   Comply with Nevada Revised Statutes ("NRS") §§ 108.2403 & 108.2407 and either post a bond in an amount equal to 150% of construction costs or establish a construction escrow account prefunded with the entire amount of construction costs prior to starting construction;

b.   Provide evidence of financial security of any construction costs estimated to exceed the $5,500,000 tenant improvement allowance landlord would be providing;

c.   Use the tenant improvement allowance only to pay the costs of construction in accordance with the $5,500,000 budget appended to the Lease and to obtain approval of any changes to said budget;

d.   Pay all costs of construction as they became due;

e.      Provide written estimates of the costs required to complete construction of the Venue as a condition of any disbursement from the tenant improvement allowance;

f.      Keep the Premises free from any liens arising out of the work performed to construct the Venue and pay, remove, cancel, bond around, or otherwise discharge any lien within ten (10) days of receiving notice of said lien; and

g.      Reimburse landlord for any expenses landlord incurred in securing the release of any mechanic's liens arising out of the work performed to construct the Venue within ten (10) business days of receiving a demand for payment.

22.     Once the Voice Show opened or the agreed-to deadline under the Lease to complete construction passed, SLATE was obligated to pay base rent in the amount of $20,000 per week, plus variable rent in the amount of a percentage of the gross revenue from the Show.

**C.      As Soon As The Tenant Improvement Dollars Are Deposited In SLATE's Account,** ███████████████████████████████████

23.     Original Landlord made the first tenant improvement allowance disbursement on October 23, 2017 and continued making disbursements through December 15, 2017, disbursing a total of $2.75 million in tenant improvement dollars during this period.

███  ████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████
███  ████████████████████████████████████
████████████████████████████████████████████
███████



████████████████████████████████████████████████████████

████████████████

**D.** ████████████████████████████████████, **SLATE Further Breaches The Lease By Starting Construction It Cannot Pay For**

30.     Having breached the Lease by ████████████████████████ ████████████████████████████████, SLATE further breached the Lease by starting construction it could not pay for.  More specifically, on December 1, 2017, SLATE received a design bid from its general contractor, Martin-Harris, in the amount of $10,708,021.83. This figure far exceeded the $5,500,000 initial construction budget that had been approved when the Lease was signed and the $5,500,000 tenant improvement allowance that the Hard Rock had agreed to contribute towards construction (money that had already been misappropriated).

31.     Even if SLATE had not already breached the Lease by misappropriating the tenant improvement allowance, upon receiving this bid SLATE would have had an obligation under the Lease to: (i) disclose this $5,000,000 shortfall; (ii) seek approval of a new budget; and (iii) comply with NRS §§ 108.2403 & 108.2407 and either post a construction bond or prefund a construction control account before starting work on the Venue.

32.     SLATE did none of the things required of it and instead elected to conceal the shortfall to fraudulently induce Original Landlord to continue disbursing funds from the tenant improvement allowance Defendants could then continue misappropriating.  In violation of the terms of the Lease and SLATE's disclosure obligations to Original Landlord, SLATE concealed this shortfall and requested a further $1,000,000 distribution from the tenant improvement allowance. SLATE did this even though SLATE was legally obligated to provide a written cost-to-complete estimate under the Lease when requesting further disbursements from the tenant improvement allowance (which would have apprised Original Landlord of the budget shortfall and allowed Original Landlord to both withhold any further distributions from the tenant improvement allowance and prevent SLATE from starting construction until it had funding in place).  Original Landlord also made repeated requests to SLATE for documentation related to the construction budget and expenditures.  SLATE did not respond to those requests.

33.     SLATE then accepted Martin-Harris's $10,708,021.83 bid and executed both a Notice to Proceed and Addendum to the Notice to Proceed that incorporated a negotiated form AIA A201 construction agreement that authorized Martin-Harris to begin construction of the Venue while Martin-Harris and SLATE negotiated a final AIA A101 lump sum contract containing the final agreed-upon price for construction of the Venue.

34.     Unaware of the massive budget shortfall or ███████████████████████ ████████████████████████, Original Landlord made a third tenant improvement allowance disbursement in the amount of $1,000,000 on December 15, 2017.

**E.      SLATE Fails To Pay Martin-Harris And BASE Entertainment Absconds With The Remaining Tenant Improvement Dollars**

35.     Defendants'   strategy   to   ████████████████████████████   while simultaneously causing SLATE to instruct Martin-Harris to start construction SLATE could not pay for turned out to be a complete and utter disaster.

36.     When Original Landlord and Plaintiffs learned that the Venue was over budget, both invoked the Hard Rock's rights under the Lease to require SLATE: (i) account for how the $2,750,000 in tenant improvement dollars had been spent; and (ii) provide proof of funds to cover the projected amount of the roughly $5,000,000 construction cost shortfall.  More specifically, in February 2018, Original Landlord requested that SLATE provide an accounting of how construction funds had been spent and proof of funds to complete construction.  This same request was then repeated by Plaintiffs in a formal post-closing demand letter sent in May 2018.

37.     Realizing their scheme had come to an end because the Hard Rock would not continue committing tenant improvement dollars to a construction project SLATE lacked the funds to complete, SLATE decided to abandon construction and simply pocket the remaining tenant improvement dollars that had not been spent on construction.

38.     More specifically, in May and June 2018, SLATE stopped paying Martin-Harris's bills, despite owing Martin-Harris $689,612.11 under pay applications six and seven for work invoiced in April and May 2018 and an additional $950,413.67 for work performed that had not yet been invoiced and $201,045.85 in earned retention.  SLATE did this while BASE Entertainment

retained the $570,155.21 in tenant improvement dollars that SLATE sent to BASE Entertainment as an "advance" that was never spent on construction.

39.     SLATE's failure to pay Martin-Harris the money it owed prompted Martin-Harris to issue a stop work notice on June 11, 2018.  This, in turn, resulted in multiple additional defaults under the Lease.  As a result of SLATE's failure to pay Martin-Harris, Martin-Harris and its subcontractors filed mechanic's liens against the Hard Rock.  Further, although the deadline to do so under the Lease has come and gone, SLATE has not: (i) completed construction of the Venue; (ii) opened the Voice Show; or (iii) paid the base rent of $20,000/week.

**F.     Defendants Lie To Plaintiffs To Conceal Their Misconduct And, Despite Repeatedly Promising To Do So, Fail To Pay Martin-Harris Or Keep SLATE's Accounts Frozen**

40.     Unaware of the true depth of Defendants' fraudulent scheme, Plaintiffs were under the impression that SLATE's construction of the Venue failed because SLATE had simply been unable to secure sufficient funding to complete construction.  As a result, Plaintiffs made a good faith attempt in June and July 2018 to work with Defendants to mitigate the impact of Defendants' abandoned construction project on the Hard Rock's operations.

41.     During these discussions, SLATE (through its representatives at BASE Entertainment) represented to Plaintiffs that SLATE had raised $6,500,000 from investors for development and production of the Voice Show.  SLATE further represented that SLATE had $1,700,000 in capital in its operating accounts.  SLATE repeatedly promised to use those funds to pay the outstanding amounts it owed to Martin-Harris for the construction of the Venue.  That promise to pay Martin-Harris's bills was repeated by SLATE's outside counsel, Greenberg Traurig, in a "draft" response to the notice of default Plaintiffs' sent on October 11, 2018.  In the "draft" response, Greenberg Traurig on behalf of BASE Entertainment and SLATE, stated that "State further agrees it will resolve and satisfy the Martin-Harris Construction claims and liens."

42.     These representations regarding the amounts SLATE had raised from investors, the money had in its operating account in June 2018, and SLATE's promise to keep the funds frozen until Martin-Harris was paid were all fraudulent. ████████████████████████████

████████████████████████████████████████████████████████████████

43.   SLATE made these false representations to conceal Defendants' misconduct and induce Plaintiffs to refrain from taking legal action against Defendants.   As soon as Plaintiffs discovered what had actually happened with the $2,750,000 in tenant improvement dollars sent to SLATE's account and the true extent of Defendants' scheme, they began taking steps to add BASE Entertainment as a defendant to this lawsuit.

**G.   Defendants Have Failed To Cure SLATE's Breaches Of The Lease Or Return The Tenant Improvement Dollars Not Spent On Construction**

44.   Plaintiffs have made repeated attempts to get Defendants to cure SLATE's defaults, resolve the mechanic's liens claims, and return the $570,155.21 in tenant improvement dollars not spent on construction.   More specifically, Plaintiffs have sent:

a.    A letter dated October 11, 2018, providing SLATE with notice that it had defaulted on obligations under the Lease and demanding that SLATE cure its breaches;

b.    A letter dated December 4, 2018, demanding that SLATE vacate the Premises and provide an accounting of the tenant improvement allowance;

c.    A letter dated December 26, 2018, demanding that SLATE resolve the mechanic's liens, vacate the Premises, and provide an accounting of the tenant improvement allowance;

d.    A letter dated January 2, 2019, demanding that SLATE resolve the mechanic's liens and indemnify Plaintiffs for any expenses they incur in connection with the mechanic's liens claims;

/ / /

/ / /

e.     A Five-Day Notice to Perform Lease Condition or Quit dated March 1, 2019, demanding SLATE either perform its obligations under the Lease or vacate the premises;

f.     A letter dated April 30, 2019, demanding that SLATE discharge the mechanic's liens and indemnify Plaintiffs for any expenses they incur in connection with the mechanic's liens claims; and

g.     A letter dated September 17, 2019, demanding return of the tenant improvement allowance.

45.     Despite Plaintiffs' repeated demands, Defendants have failed to have SLATE cure its defaults, resolve the mechanic's liens, or return the tenant improvement dollars not spent on construction.  As a result, Plaintiffs were forced to negotiate a resolution of the mechanic's liens claims with Martin-Harris in exchange for a payment to Martin-Harris of $1,550,000 and an assignment of Martin-Harris's claims against Defendants.  Pursuant to the terms of the Lease, Plaintiffs have since demanded that SLATE reimburse Plaintiffs for this expense.  Defendants have failed to do that either.

## FIRST CLAIM FOR RELIEF
### (Breach of Lease – against all Defendants)

46.     Plaintiffs repeat and reallege the allegations contained in the above paragraphs as though fully set forth herein.

47.     The Lease is a valid and enforceable contract that has been assigned to Plaintiffs along with all of Original Landlord's rights and claims.

48.     Pursuant to the Lease, SLATE agreed to, among other things:

a.     Pay rent;

b.     Expeditiously complete construction of the Venue, but in any event, no later than the agreed-to deadline;

c.     Comply with NRS §§ 108.2403 & 108.2407 and either post a bond in an amount equal to 150% of construction costs or establish a construction escrow

1  account prefunded with the entire amount of construction costs prior to

2  starting construction;

3      d.    Provide evidence of financial security of any construction costs estimated to

4  exceed the $5,500,000 tenant improvement allowance;

5      e.    Use the tenant improvement allowance to pay the costs of construction in

6  accordance with the $5,500,000 initial construction budget appended to the

7  Lease and to obtain approval of any changes to said budget;

8      f.    Obtain approval of changes to the $5,500,000 initial construction budget

9  appended to the Lease;

10      g.    Pay all costs of construction as they became due;

11      h.    Provide written estimates of the costs required to complete construction of the

12  Venue as a condition of any disbursement of the tenant improvement

13  allowance; and

14      i.    Keep the Premises free from any liens arising out of the work performed to

15  construct the Venue and pay, remove, cancel, bond around, or otherwise

16  discharge any lien within ten (10) days of receiving notice of any lien.

17      49.    SLATE has breached the Lease by, among other things:

18      a.    Failing to pay rent;

19      b.    Failing to complete construction of the Venue;

20      c.    Failing to either post a construction bond or fully prefund an escrow account

21  prior to starting construction;

22      d.    Failing to provide evidence of financial security to complete construction;

23      e.    Misappropriating the tenant improvement allowance;

24      f.    Failing to pay all costs of construction of the Venue as they became due;

25      g.    Failing to obtain approval of changes to the budget;

26      h.    Failing to keep the Premises free from liens arising out of the work performed

27  to construct the Venue;

28  / / /

i.      Failing to keep the premises clear from liens arising out of the construction of the Venue; and

j.      Failing to reimburse Plaintiffs for the expense Plaintiffs incurred to secure release of the mechanic's liens.

50.     Plaintiffs have, on multiple occasions, demanded that SLATE cure its various breaches, which demand has been refused.

51.     Plaintiffs have complied with all terms and conditions of the Lease, and all conditions of their performance are satisfied.

52.     As a direct and proximate result of SLATE breaches of the Lease, Plaintiffs have been damaged in an amount in excess of $15,000, plus interest thereon, at the highest legal rate until paid in full.

53.     BASE is liable for SLATE's breaches of the Lease because it is the general partner of SLATE.

54.     BASE Entertainment is liable for SLATE's breaches of the Lease because SLATE and BASE are its alter-egos.

55.     As a result of Defendants' activities, it has become necessary for Plaintiffs to employ the services of the law firms of Armstrong Teasdale LLP and Reed Smith LLP to prosecute this suit. Plaintiffs are entitled to recover their reasonable attorney fees and court costs incurred herein as provided for in the Lease.

**SECOND CLAIM FOR RELIEF**
**(Breach of Implied Covenant of Good Faith and Fair Dealing – against all Defendants)**

56.     Plaintiffs repeat and reallege the allegations contained in the above paragraphs as though fully set forth herein.

57.     The Lease is a valid and enforceable contract that has been assigned to Plaintiffs along with all of Original Landlord's its rights and claims.

58.     The covenant of good faith and fair dealing is implied in every contract.

59.     As a matter of law, the Lease contained an implied covenant on the part of SLATE to act in good faith and deal fairly in connection with all aspects of its performance under the Lease.

60.     SLATE's actions in: (i) ███████████████████████████████████ ███████████████; (ii) instructing Martin-Harris to start construction of the Venue in light of a projected $5,000,000 construction shortfall; and (iii) requesting a further $1,000,000 distribution from the tenant improvement allowance without apprising Original Landlord of the projected budget shortfall; constitutes breaches of the implied covenant of good faith and fair dealing.  Said actions were undertaken in an attempt to prevent Original Landlord from exercising its rights under the Lease—specifically, Original Landlord's rights to withhold any disbursements from the tenant improvement allowance and to prevent SLATE from starting construction in the event construction costs were estimated to exceed the $5,500,000 budget appended to the Lease.

61.     As a direct and proximate result of SLATE's breach of the implied covenant of good faith and fair dealing implied under the Lease, Plaintiffs have been damaged in an amount in excess of $15,000, plus interest thereon, at the highest legal rate until paid in full.

62.     BASE is liable for SLATE's breach of the implied covenant of good faith and fair dealing implied under the Lease because it is SLATE's general partner.

63.     BASE Entertainment is liable for SLATE's breach of the implied covenant of good faith and fair dealing implied under the Lease because SLATE and BASE are its alter-egos.

64.     As a result of Defendants' activities, it has become necessary for Plaintiffs to employ the services of the law firms of Armstrong Teasdale LLP and Reed Smith LLP to prosecute this suit. Plaintiffs are entitled to recover their reasonable attorney fees and court costs incurred herein as provided for in the Lease.

**THIRD CLAIM FOR RELIEF**
**(Breach of Construction Contract – against all Defendants)**

65.     Plaintiffs repeat and reallege the allegations contained in the above paragraphs as though fully set forth herein.

66.     SLATE hired Martin-Harris as its general contractor on the Venue and executed both a Notice to Proceed and an Addendum to the Notice to Proceed that incorporated a negotiated form AIA A201 construction agreement while SLATE and Martin-Harris negotiated a form AIA A101 construction agreement.  These agreements governed the work SLATE retained Martin-Harris to perform.

67.     Despite Martin-Harris's timely submission of pay applications six and seven to SLATE and SLATE's certification of the $689,612.11 owed thereunder, SLATE had failed to make payment to Martin-Harris of the amounts owed under these payment applications.

68.     Further, despite Martin-Harris's timely submission of pay application eight to SLATE, SLATE failed to comply with its obligation to a final determination of the $950,413.67 owed thereunder or the retention of $201,045.82 that SLATE owed.

69.     Pursuant to the terms of the parties' AIA A201 construction agreement, Martin-Harris attempted to mediate with SLATE before filing suit.  More specifically, on August 13, 2019, Martin-Harris attended a mediation before the Honorable Jennifer Togliatti.  At SLATE's request, the mediation was a tri-party mediation that included Martin-Harris, SLATE and JC Hospitality.

70.     The mediation was unsuccessful in resolving Martin-Harris's claims against SLATE for payment of amounts owed, but did result in an assignment of those claims to JC Hospitality—who is now pursuing those claims in Martin-Harris's name.

71.     As a direct and proximate result of SLATE's breaches of the Notice to Proceed and AIA A101/AIA A201 agreements, JC Hospitality is entitled to recovery no less than the $1,841,071.60 SLATE owes to Martin-Harris under pay applications six, seven and eight, plus interest thereon, at the highest legal rate until paid in full.

72.     BASE is liable for the amounts owed to Martin-Harris because it is the general partner of SLATE.

73.     BASE Entertainment is liable for the amounts owed to Martin-Harris because SLATE and BASE are its alter-egos.

74.     As a result of Defendants' activities, it has become necessary for Plaintiffs to employ the services of the law firms of Armstrong Teasdale LLP and Reed Smith LLP to prosecute this suit. Plaintiffs are entitled to recover their reasonable attorney fees and court costs incurred herein as provided for in the Lease.

**FOURTH CLAIM FOR RELIEF**
**(Fraud – against all Defendants)**

75.     Plaintiffs repeat and reallege the allegations contained in the above paragraphs as

17

though fully set forth herein.

76.     The Lease is a valid and enforceable contract that has been assigned to Plaintiffs along with all of Original Landlord's its rights and claims.

77.     Under the terms of the Lease, SLATE had an obligation to disclose any budgetary overruns and seek approval of a new budget prior to commencing construction of the Venue. Further, SLATE was obligated to provide estimates of the cost to complete construction as a precondition of any disbursement from the tenant improvement allowance.

78.     Despite being legally obligated to disclose this information, Defendants concealed from Original Landlord information about ████████████████████████████████ ███████████████████████████████████████████. Defendants also concealed Martin-Harris's December 1, 2017 bid in the amount of $10,708,021.83 by delaying disclosing the construction budget overage until January 2018.

79.     SLATE concealed this information in order to induce Original Landlord to make a further $1,000,000 distribution from the tenant improvement allowance on or about December 15, 2017 that Original Landlord had no obligation to make in light of SLATE's conversion of the tenant improvement allowance and budget shortfall.

80.     In concealing this information, SLATE intended to induce Original Landlord to act or refrain from acting.  In particular, SLATE was aware that if it disclosed the budget shortfall, Original Landlord would have exercised its rights under the Lease to withhold the $1,000,000 distribution from the tenant improvement allowance and concealed this information to induce Original Landlord to make the $1,000,000 distribution that SLATE subsequently misdirected to BASE Entertainment's account.

81.     Had this information not been concealed, Original Landlord would have ceased making distributions of the tenant improvement allowance.  Indeed, once Original Landlord was informed of the budget problems (but not the misappropriation) in January 2018, Original Landlord notified SLATE it would not make further distributions from the tenant improvement allowance until SLATE came forward with proof of funds sufficient to complete construction.  This required SLATE to not only come up with the $5,000,000 shortfall, but also to replace the millions SLATE

had already misappropriated from the tenant improvement allowance.

82.     Defendants' actions were intentional, willful, and malicious, and Plaintiffs are entitled to punitive and exemplary damages pursuant to NRS 42.005.

83.     In addition to having direct liability for its own tortious conduct, BASE Entertainment is liable for the fraud because SLATE and BASE are its alter-egos.

84.     As a result of Defendants' activities, it has become necessary for Plaintiffs to employ the services of the law firms of Armstrong Teasdale LLP and Reed Smith LLP to prosecute this suit. Plaintiffs are entitled to recover their reasonable attorney fees and court costs incurred herein as provided for in the Lease.

**FIFTH CLAIM FOR RELIEF**
**(Conversion – against all Defendants)**

85.     Plaintiffs repeat and reallege the allegations contained in the above paragraphs as though fully set forth herein.

86.     The Lease is a valid and enforceable contract that has been assigned to Plaintiffs along with all of Original Landlord's its rights and claims.

87.     Original Landlord distributed $2,750,000 in tenant improvements from the tenant improvement allowance to SLATE.

88.     Under the terms of the Lease, the $2,750,000 in tenant improvements could only be used for construction of the Venue in accordance with the approved budget.



94.   Defendants have wrongly exerted dominion and control over these misappropriated funds by directing said funds be transferred to BASE Entertainment.

95.   As a direct and proximate result of Defendants' conversion, Plaintiffs have been damaged in an amount in excess of $15,000, plus interest thereon, at the highest legal rate until paid in full.

96.   Defendants' actions were intentional, willful, and malicious, and Plaintiffs are entitled to punitive and exemplary damages pursuant to NRS 42.005.

97.   As a result of Defendants' activities, it has become necessary for Plaintiffs to employ the services of the law firms of Armstrong Teasdale LLP and Reed Smith LLP to prosecute this suit. Plaintiffs are entitled to recover their reasonable attorney fees and court costs incurred herein as provided for in the Lease.

/ / /

/ / /

**SIXTH CLAIM FOR RELIEF**
**(Civil Conspiracy to Commit Fraud and Conversion – against all Defendants)**

98.    Plaintiffs repeat and reallege the allegations contained in the above paragraphs as though fully set forth herein.

99.    The Lease is a valid and enforceable contract that has been assigned to Plaintiffs along with all of Original Landlord's its rights and claims.

100.    Original Landlord distributed $2,750,000 in tenant improvements from the tenant improvement allowance to SLATE.

101.    Under the terms of the Lease, the $2,750,000 in tenant improvements could only be used for construction of the Venue in accordance with the approved budget.



107.   At the same time, Defendants also conspired to conceal ███████n and the budgetary shortfall SLATE was confronting to induce Original Landlord to continue making disbursements from the tenant improvement allowance.

108.   Had this information not been concealed, Original Landlord would have ceased making distributions of the tenant improvement allowance.  Indeed, once Original Landlord was informed of the budget problems (but not the misappropriation) in January 2018, Original Landlord notified SLATE it would not make further distributions from the tenant improvement allowance until SLATE came forward with proof of funds sufficient to complete construction.  This required SLATE to not only come up with the $5,000,000 shortfall, but also to replace the millions Defendants had already misappropriated from the tenant improvement allowance.

109.   Defendants' actions were intentional, willful, and malicious, and Plaintiffs are entitled to punitive and exemplary damages pursuant to NRS 42.005.

110.   As a result of Defendants' activities, it has become necessary for Plaintiffs to employ the services of the law firms of Armstrong Teasdale LLP and Reed Smith LLP to prosecute this suit. Plaintiffs are entitled to recover their reasonable attorney fees and court costs incurred herein as provided for in the Lease.

**SEVENTH CLAIM FOR RELIEF**
**(Unjust Enrichment – against all Defendants)**

111.   Plaintiffs repeat and reallege the allegations contained in the above paragraphs as though fully set forth herein.

112.   Plaintiffs and their and predecessor-in-interest, Original Landlord, conferred a benefit on SLATE, BASE, and BASE Entertainment by providing the Premises for use and occupancy and providing $2,750,000 from the tenant improvement allowance for construction of the Venue.

113.   SLATE took possession of the Premises during the term of the Lease to the exclusion

of others and accepted funds from the tenant improvement allowance, ████████████

████████████████████████████.

114.  By retaining possession of the Premises to the exclusion of others SLATE and BASE, its general partner, have been unjustly enriched. ████████████████████

████████████████████████████.

115.  As a result of SLATE, BASE, and BASE Entertainment's conduct, Plaintiffs have been damaged in an amount in excess of $15,000, plus interest thereon, at the highest legal rate until paid in full.

116.  As a result of SLATE, BASE, and BASE Entertainment's activities, it has become necessary for Plaintiffs to employ the services of the law firms of Armstrong Teasdale LLP and Reed Smith LLP to prosecute this suit.  Plaintiffs are entitled to recover their reasonable attorney fees and court costs incurred herein.

## EIGHTH CAUSE OF ACTION
### (Declaratory Relief – against SLATE)

117.  Plaintiffs repeat, reallege, and reincorporates herein by reference each and every of the allegations set forth in the preceding paragraphs.

118.  A justiciable controversy exists between Plaintiffs and SLATE pursuant to the Uniform Declaratory Judgment Act, codified at NRS 30.010, et seq.  Such a controversy exists where a claim of right is asserted against one who has an interest in contesting it.

119.  Plaintiffs are entitled to a declaration from this Court that SLATE's: (i) misappropriation of the tenant improvement allowance; (ii) failure to pay rent; (iii) failure to complete construction of the Venue; (iv) failure to either post a construction bond or prefund an escrow account prior to starting construction; (v) failure to provide evidence of financial security to complete construction; (vi) failure to pay all costs of construction of the Venue as they became due; (vii) failure to obtain approval of changes to the budget; and (viii) failure to keep the Premises free from liens arising out of the work performed to construct the Venue; are breaches of the Lease.

120.  Plaintiffs are further entitled to a declaration from this Court that it is able to recover from SLATE damages due to SLATE breaches of the Lease, including without limitation, attorney

fees and legal expenses as authorized by the Lease.

121.  Pursuant to NRS 30.120, Plaintiffs are entitled to an award of costs for bringing this action.

122.  As a result of SLATE's activities, it has become necessary for Plaintiffs to employ the services of the law firms of Armstrong Teasdale LLP and Reed Smith LLP to prosecute this suit. Plaintiffs are entitled to recover their reasonable attorney fees and court costs incurred herein.

**WHEREFORE**, Plaintiffs requests the following relief:

1.  That this Court enter judgment against Defendants on one or more causes of action, in an amount in excess of $15,000, plus interest accruing at the maximum legal rate until paid in full;

2.  That this Court declare that SLATE breached the Lease;

3.  For a finding that the actions of Defendants were intentional, willful, and malicious, and Plaintiffs are entitled to punitive and exemplary damages;

4.  For an award of the costs of suit;

5.  For an award of reasonable attorney fees; and

6.  Such other and further relief as the Court may deem just and proper.

DATED: June 22, 2020.                  ARMSTRONG TEASDALE LLP

By: /s/ Brandon P. Johansson
     KEVIN R. STOLWORTHY, ESQ.
     Nevada Bar #2798
     BRANDON P. JOHANSSON, ESQ.
     Nevada Bar #12003
     3770 Howard Hughes Parkway, Suite 200
     Las Vegas, NV 89169

     JAMES L. SANDERS, ESQ.
     California Bar No. 126291 (*Admitted Pro Hac Vice*)
     KASEY J. CURTIS, ESQ.
     California Bar No. 268173 (*Admitted Pro Hac Vice*)
     REED SMITH LLP
     355 South Grand Avenue, Suite 2900
     Los Angeles, California 90071

     *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of June, 2020, the foregoing **FIRST AMENDED COMPLAINT** was served to the parties below as follows:

☒ via electronic service through Odyssey pursuant to NEFCR 9, NRCP 5(b) and EDCR 7.26 to:

Mark E. Ferrario, Esq. - ferrariom@gtlaw.com
Jason K. Hicks, Esq. - hicksja@gtlaw.com

☐ by mailing a copy thereof, first class mail, postage prepaid, to:

Mark E. Ferrario, Esq.
Jason K. Hicks, Esq.
GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135

*Attorneys for Defendants Slate the Voice*
*Limited Partnership and Base the Voice, LLC*

/s/ Jessica Myrold
An employee of Armstrong Teasdale LLP